Johnson, J.
Webster was convicted by the court of common pleas of Trumbull county, at the June term thereof, 1885, of murder in the first degree, and sentenced to be hanged February 5, 1886. November 11, 1885, he filed a' petition in error in the circuit court of said county to reverse the judgment of the court below.
The first term of the circuit court at which said case can be heard begins April 27, 1886, some two months after the date fixed for his execution. He moved the circuit court for a suspension of sentence until his case can be passed upon by that court. This motion was refused on the ground that said court had no jurisdiction to hear the motion or make any valid order in the premises.
Application is now made for such suspension by this court. As the case is now pending iu^the circuit court, this court can not, under the provisions of the constitution, entertain jurisdiction to consider the same. Kent v. Mahaffy, 2 Ohio St. 498; P. Ft. W. & C. R. Co. v. Hurd, 17 Ohio *697 St. 144. The reasons there given for this holding need not be restated. It follows therefore that unless the circuit court has jurisdiction to suspend sentence until the ease can be heard, the plaintiff in error must be hanged before his case can'be heard upon error, uuless the governor grants a suspension.
The claim made by the circuit court is, that the power which always existed under the criminal practice acts for the judges or court hearing the error case to suspend sentence until final hearing of a capital case, has been repealed by implication- by the act of April 29, 1885 (82 Ohio L. 169, 170), which amended section 7343 of the Revised Statutes. That section provided, that “unless a suspension of execution be ordered by the supreme court, or two judges thereof, the sheriff shall proceed at the time and place named in the warrant to cause the person sentenced to be hanged by the neck until he be dead,” etc.
This section as amended is exactly the same in this respect except the words, “ or coroner,” inserted after the word “ sheriff” in the former section. Both sections relate to the execution of the death sentence. The power of the circuit court is not derived from these sections. It is conceded that the circuit court and its predecessor, the district court, and its predecessor, the supreme court, had, prior to the act oí April 29,1885, power to suspend sentence in such cases pending before it. But it is claimed that as the amended section 7343 provided for the execution oftbe death sentence, unless suspended “by the supreme court or two judges thereof,” is later in date than the act of April 18, 1883, or its amendments, which conferred upon the district court and circuit court, the power to review any criminal case and suspend sentence, that the statutes authorizing a suspension of sentence until the case can be heard (80 Ohio L. 170), are repealed by implication by the amendment to section 7343 (82 Ohio L. 170).
Repeals by implication are not favored, especially since the adoption of our present constitution, wherein ft is provided that .no act shall be amended unless, the new act *698 contains the entire act revived, or the section or sections amended; and the section or sections so amended shall be repealed.
In this case the act of April 29,1885, does not amend the section or sections relating to the power of the district or circuit court to suspend sentence, but the section relating to the mode of the execution of death sentences is left unaffected.
A brief history of the legislation upon this subject will show that section 7343 was not intended either to confer power or to limit the power of the district and circuit courts, but was simply directed to the mode and manner in which sheriffs and coroners should execute the death sentence, and was neither a repeal expressly, or by implication, of the powers of the court conferred by sec» tion 7356, as amended February 7, 1885 (82 Ohio L. 39). By the act of March ‘7,1835, S. & C. 417, sec. 40, of the act providing that the punishment of the death senten ce shall in all cases be by hanging by the neck until dead, by the sheriff. This permitted public executions. These were abolished March 12,1844, S. & C. 1191, which was amended by the act of February 16, 1846, S. & C. 1191, 1192; Thereafter all executions were required to be had in pri-< vate. Up to this date the legislation directing the mode of execution of the death sentence did not contain the words found in the amendment of section 7343 “unless the suspension of execution be ordered by the supreme court or two judges thereof.”' Though the acts of 1835,. 1844, and 1846 contained no such clause, it was always understood that if the court hearing the case did, as it had power to do, suspend the execution of sentence, the sheriff could not, in the face of an order of suspension, violate such order and proceed to the execution before the final hearing of the case on error. By the act of March 9, 1866, entitled an act prescribing the duties of the clerk and sheriff in carrying into execution the death sentence, this phrase “the supreme court or two judges thereof,” was first introduced. Swan & Sayler, 616. By the second section of that act, *699 which is equivalent to section 7343, it was provided: “ That it shall be the duty of said sheriff on receipt of said warrant, provided the supreme court or two judges thereof have not ordered the suspension of the execution of said sentence,” to proceed to execute the sentence; and in section 3 of the same act it is provided that in case the “supreme court or two .judges thereof,” have allowed a writ of error and suspension of sentence until the case could be heard, and fixed a day for the execution of the death sentence, it shall be the duty of the sheriff to so execute it at the time fixed by said court.
At the time of the passing of this act of 1866 there was no supreme court in existence, within the meaning of the phrases there used. The supreme court was long before abolished, and the district court had succeeded it. Schedule of the constitution of 1851, section 12, provided that this court was to be the successor of the supreme court in bank, and that the district court should be the successor of the supreme court. The supreme court in bank meant the sessions of the court at the capitol, composed of all the four judges of the state, and the words, supreme court meant the sessions held in the several counties' by two of the judges of the supreme court in bank. Hence, by section 6 of the act of April 30, 1852, relating to the organization of courts (S. & O. 383), it was among other things provided that “all the laws regulating the practice of, . . . or granting powers to the supreme court, or any judge thereof, and the courts of common pleas or any judge thereof, respectively, under the former constitution . . . except as to the matters of probate jurisdiction . . . shall govern the practice of and impose like duties upon the district courts and courts of common pleas . . .”
Thus the words “ district court ” are made the equivalent in meaning to the words “ supreme court,” and wherever the words “ supreme court or any two judges thereof” were found in the statutes then existing they were equivalent to the words district court. Thus in “an act to allow writs of error in criminal cases,” passed March 7,1831, S. & O. *700 1187, it was provided: “that’in criminal cases,not punishable with death, writs of error may, on good cause shown, be allowed on the application of the defendant, by the supreme court, or any judge thereof in vacation, as in civil cases; and in criminal cases punishable with death, writs of error may be allowed on a like application, by said court when in session, in open court, or by any two judges in vacation.” And when so allowed in a capital case, the judges or court “ shall order a suspension of execution until such writ of error shall be heard and determined.”
This act of 1831 remained in full force until repealed by the act of May 6,1869 (66 Ohio L. 287-324), being the code of criminal procedure. Thus from 1851 until 1869 the words “supreme court or any two judges thereof,” found in the act of 1831, above quoted, meant and was to be read as “ district court or any two judges thereof.”
When the act of 1866, relating to the mode of executing death sentences, used these words, “ supreme court or any two judges thereof,” their legal meaning was, “ the district court or any two judges thereof,” and hence also the use of these words in the act of 1866 should read “ district court or any two judges thereof.” The presumption is that the legislature borrowed from the act of 1831, then in force, literally, instead of the legal meaning of the words. Such was the construction of these words in the act of 1866, and the amendment of last winter has not changed this meaning. It can not be presumed that when so used it was intended to repeal by implication their legal meaning in the act of 1831. The statutes in pari materia must be construed together; when so construed the words, “ supreme court or any two judges thereof,” meant the “district court or any two judges thereof.” The subsequent amendments of the act of 1866, found in the revision, and in the amendment to section 7343, have the same legal ■ meaning., When so read they are in harmony with the criminal procedure act, and make it the duty of the sheriff or coroner to execute the death sentence, unless sentence is suspended *701 by the district court while in existence, or its successor, the circuit court, or any two judges thereof.
It is only when there is an irreconcilable repugnancy that the later statute repeals a former. There is no such repugnancy here. The amendment of section 7343 has the same meaning as it had when it took effect in 1866. It was never intended to divest the court allowing a writ of the power to suspend sentence, otherwise we would have the anomaly of hanging a man first and then hear the error case afterward.
The intention of these several acts is manifest, and where this is so courts are not to be confined to the letter of the law. Qui hceret in litera, hceret in cortice. Potter’s Dwarris, 144.
Motion overruled.